UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LARRY HARMON and HARMON-           )
CASTILLO, LLP, f/k/a LARRY HARMON  )
& ASSOCIATES, P.A.,                )
                                   )
                  Plaintiffs,      )
                                   )
        vs.                        )            10 C 1823
                                   )
BEN GORDON,                        )
                                   )
                  Defendant.       )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant Ben Gordon

("Gordon") to dismiss the Complaint of Plaintiffs Larry Harmon and Harmon-Castillo,

LLP, for failure to state a claim. For the reasons set forth below, Gordon's motion is

granted in part and denied in part.

## BACKGROUND

According to the allegations of the complaint, which we must accept as true for

purposes of this motion,[1] Plaintiff Larry Harmon is an individual residing in California

and Plaintiff Harmon-Castillo, LLP, (collectively, "LHA") is a California-based entity

serving as accountant and business manager for professional athletes. LHA alleges that

---

[1] *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

on May 17, 2004, it entered into a consulting agreement with Ben Gordon ("Gordon"), a professional basketball player currently employed by the Detroit Pistons of the National Basketball Association ("NBA"). Pursuant to the terms of the consulting agreement, Gordon engaged LHA as consultants and financial advisors for the entire duration of his playing career in the NBA. LHA alleges that the parties initially agreed that in exchange for its services LHA would receive monthly payments of $4,000 during Gordon's rookie season, $5,000 during his second season, and $6,000 during his third and fourth seasons.

LHA asserts that in May 2006, Harmon informed Gordon by e-mail that the flat monthly rates would be replaced with a new percentage-based fee amounting to 1.5% of Gordon's total income. LHA claims Gordon acknowledged receiving the e-mail and did not object to the change. From May 2006 to June 2007, Gordon received LHA's monthly invoices which displayed the new fee arrangement at a rate of 1.5%. LHA submits that Gordon paid all the invoices according to the newly-modified 1.5% rate, and that overall Gordon benefitted from the percentage-based calculation of fees because he was charged less than what he would have been with the flat-fee based amounts. Gordon did not object to the new fee structure until sometime in 2007 when he fired LHA as his financial advisors. LHA claims that, under the terms of their

agreement, Gordon had no right to terminate LHA because he remains an active player of the NBA.

LHA further alleges that in February 2007 Gordon agreed to transfer $1,000,000 to Vitalis, an entity affiliated to LHA. According to LHA, Gordon believed that the money would be used to acquire an equity interest in a real estate property. The parties executed a promissory note memorializing their agreement. LHA asserts that the instrument Gordon signed expressly disclosed LHA's interest in the transaction and obligated LHA to repay the funds within a certain period of time.

On September 19, 2007, Gordon filed suit against LHA in the Circuit Court of Cook County. Although the suit was originally filed in Illinois state court, LHA removed the case to this court on diversity grounds. In his complaint, Gordon asserted a breach of contract claim for failure to pay the principal loan amount of $1,000,000. Gordon also asserted a breach of fiduciary duty claim in connection with the fee structure of the consulting agreement and with the monetary transaction underlying the promissory note. In the allegations related to the breach of fiduciary duty claim, Gordon averred that he never agreed to changing the fee structure from a flat fee to a percentage-based fee. Gordon also alleged that LHA failed to disclose the true nature of the $1,000,000 investment, that the purported real estate investment was in reality

a loan to LHA, and that LHA used the money to obtain its own interest in real estate property.

LHA alleged counterclaims of breach of contract and tortious interference with prospective business advantage. Gordon moved to dismiss the counterclaims for failure to state a claim. On July 31, 2008, we denied Gordon's motion as to the breach of contract count but granted the motion with respect to the tortious interference count. Subsequently, Gordon requested summary judgment in his favor on the breach of contract claim and LHA requested the same relief on Gordon's breach of fiduciary duty count. On January 27, 2010, we awarded Gordon summary judgment on his breach of contract claim and granted LHA's motion for summary judgment on Gordon's breach of fiduciary duty claim. We also dismissed LHA's counterclaim for breach of contract for lack of diversity jurisdiction.

On March 2, 2010, LHA filed a four-count complaint against Gordon alleging breach of contract, malicious prosecution, abuse of process, and tortious interference with prospective business advantage. Gordon now moves to dismiss all counts of the complaint for failure to state a claim.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling

on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations contained in the complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 555 (2007). However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). With these principles in mind, we now consider Gordon's motion to dismiss.

## DISCUSSION

### A.    Count I: Breach of Contract

Gordon asks that we dismiss LHA's breach of contract claim. In support of dismissal, Gordon argues that, in the context of a principal-agent relationship, the client has an absolute right to terminate the agent and that such termination does not constitute a breach of contract even though the relationship between the parties is contractual.[2] Under Illinois law, when a principal and an agent enter into a contract for a specific

_____

[2] The parties do not dispute that LHA served in a fiduciary capacity to Gordon; for purposes of this analysis, we will assume without deciding that a fiduciary relationship existed between the litigants.

term, the principal may still revoke the agent's authority "at any time and under any circumstances." *Lehman v. Eugene Matanky & Assoc. Inc.*, 438 N.E.2d 614, 619 (Ill. App. Ct. 1982). However, a principal who agreed to employ the agent for a certain length of time cannot revoke the agency "rendering himself legally liable for such damages." *Kenilworth Realty Co. v. Sandquist,* 371 N.E.2d 936, 939 (Ill. App. Ct. 1977). Such a revocation results in a repudiation of the principal's contractual obligations. *Id*. Here, LHA has alleged that Gordon agreed to use LHA's financial and consulting services on an exclusive basis for the entire duration of his NBA playing career, and that Gordon fired LHA while he was still an active player. Assuming, as we must, that these allegations are true, Gordon's premature revocation would constitute a breach of contract under Illinois law. Accordingly, dismissal of Count I is not warranted under Rule 12(b)(6).

**B.     Count II: Malicious Prosecution**

Gordon contends that Count II should be dismissed because LHA has not alleged each of the five elements necessary to establish that claim. To plead a claim of malicious prosecution in Illinois, a plaintiff must, among other elements, allege facts showing that he sustained a special injury resulting from the suit instituted by the defendant. *Porter v. City of Chicago*, 912 N.E.2d 1262, 1265 (Ill. App. Ct. 2009). Without the arrest of a person, the seizure of a person's property, "or some other special

injury exceeding the usual expense, annoyance and inconvenience of defending a lawsuit," a cause of action for malicious prosecution cannot lie. *Equity Assoc. Inc., v. Vill. of Northbrook*, 524 N.E.2d 1119, 1122 (Ill. App. Ct. 1988); see also *Reed v. Doctor's Assoc. Inc.*, 824 N.E.2d 1198, 1205 (Ill. App. Ct. 2005). After reviewing the Complaint, we find that LHA has failed to sufficiently plead the special injury element. In paragraph 37 of the complaint, LHA alleges that Gordon's breach of fiduciary duty claim received extensive media coverage which subsequently caused severe financial injury and damage to LHA's reputation. In paragraph 40, LHA alleges that Gordon's lawsuit caused LHA to lose existing and potential future clients, as well as attorneys' fees and litigation costs. In Illinois, allegations of loss of future potential clients, loss of earnings, expenses related to the defense of an absurd or frivolous suit including attorneys' fees and other costs, as well as damage to plaintiff's reputation, are inadequate to satisfy the special injury requirement. *Equity Assoc. Inc.*, 524 N.E.2d at 1122. LHA's alleged damages equate to nothing more than the usual expense and inconvenience routinely associated with defending a lawsuit. Moreover, LHA has not pointed to any relevant state authority that would suggest otherwise. Therefore, we grant Gordon's motion to dismiss LHA's malicious prosecution claim.

**C.    Count III: Abuse of Process**

Gordon asks that we dismiss LHA's abuse of process claim because Gordon's institution of the first lawsuit had no other purpose but to recoup the funds he had transferred. Under Illinois law, an abuse of process claim requires proof of two elements: the existence of an ulterior motive or purpose, and most critically, some act in the use of the legal process not proper in the regular prosecution of the proceedings. *Reed v. Doctor's Assoc. Inc.,* 824 N.E.2d 1198, 1206 (Ill. App. Ct. 2005). To determine whether the second element has been sufficiently alleged, the court must assess whether the complaint asserts that "process has been used to accomplish some end which is beyond the purview of the process or which compels the party against whom it is used to do some collateral thing that he could not legally and regularly be compelled to do." *Id.* In the present matter, the complaint alleges that Gordon filed the first lawsuit with the ulterior motive or purpose of extorting, intimidating, and embarrassing LHA as well as hurting its reputation. LHA has also alleged that Gordon filed the first lawsuit to force LHA to settle. These allegations, even if accepted as true, do not demonstrate an improper use of the legal process that would help Gordon accomplish a collateral and improper purpose. The mere institution of a proceeding, even if brought simply to harass the other party or to coerce a settlement, does not constitute abuse of process.

*Doyle v. Schlensky*, 458 N.E.2d 1120, 1128 (Ill. App. Ct. 1983). The motion to dismiss Count III is therefore granted.

## D.    Count IV: Tortious Interference With Prospective Business Advantage

Gordon maintains that LHA should be estopped from re-litigating the tortious interference with prospective business advantage claim under the doctrine of res judicata.[3] A federal court sitting in diversity jurisdiction applies the res judicata principles of the state in which the court is located. *Semtek Int'l Inc., v. Lockheed Martin Corp.,* 531 U.S. 497, 508 (2001)*; Allan Block Corp., v. County Materials Corp*., 512 F.3d 912, 915 (7th Cir. 2008). Under Illinois law, dismissal of a claim for failure to state a claim is an adjudication on the merits for res judicata purposes. *River Park Inc., v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). Here, we dismissed LHA's tortious interference claim during the first proceedings and our decision was a final judgment on the merits. Therefore, LHA is precluded from pleading the same claim.

Moreover, in the responsive brief, LHA claims that its allegations are sufficient to support a tortious interference claim under Illinois law. During the previous judicial

---

[3] The proper procedure for addressing an affirmative defense such as res judicata is for the defendant to raise it in his answer and then move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *Carr v. Tillery,* 591 F.3d 909, 913 (7th Cir. 2010). However, rather than requesting that the City resubmit its motion, we elect to treat the instant motion as a motion for judgment on the pleadings.

proceedings between the parties, LHA asserted an identical claim but instead argued that California authority applied to the claim. Based on LHA's contentions, we concluded that LHA had not stated a cognizable claim under California law. The doctrine of judicial estoppel "prevents a party that has taken one position in litigating a particular set of facts from later reversing its position when it is advantageous to do so." *Levinson v. U.S.*, 969 F.2d 260, 264 (7th Cir. 1992). Here, LHA has adopted two different postures in two cases arising out of the same facts. Accordingly, we conclude that LHA is judicially estopped from pressing the same tortious interference claim.

## CONCLUSION

Gordon's motion to dismiss is denied with respect to Count I. Gordon's motion to dismiss is granted with respect to Counts II-IV.

Charles P. Kocoras
United States District Judge

Dated:   January 27, 2011